# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### BECKLEY DIVISION

| | |
|---|---|
| **DENNIS R. MACK,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 5:05-0636** |
| ) | |
| **JO ANNE B. BARNHART,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for Disability Insurance Benefits (DIB) under Titles II of the Social Security Act, 42 U.S.C. §§ 401-433. This case is presently pending before the Court on cross-Motions for Judgment on the Pleadings. (Doc. Nos. 14, 18.) Both parties have consented in writing to a decision by the United States Magistrate Judge.

The Plaintiff, Dennis R. Mack (hereinafter referred to as "Claimant"), filed an application for DIB on September 12, 2003 (protective filing date), alleging disability as of June 1, 1982, due to bipolar disorder and depression.[1] (Tr. at 12, 39, 45, 57, 58-60.) The claims were denied initially and upon reconsideration. (Tr. at 39-40, 45-47.) On February 2, 2004, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 48.) The hearing was held on April 26, 2005, before the Honorable David S. Antrobus. (Tr. at 323-39.) By decision dated May 23, 2005, the ALJ determined

---

[1] Claimant previously filed an application for DIB on July 20, 1983, alleging disability as of November 14, 1981, due to a nervous condition. (Tr. at 11, 29.) The claim was denied initially on August 18, 1983, and upon reconsideration on November 9, 1983. (Tr. at 11, 29.) An administrative hearing was held on January 28, 1985, before the Honorable Arthur T. Stephenson, Administrative Law Judge ("ALJ"). (Tr. at 29.) By decision dated February 13, 1985, the ALJ denied Claimant's application for benefits. (Tr. at 11, 27-33.) Claimant did not appeal the ALJ's decision. (Tr. at 11.)

that Claimant was not entitled to benefits. (Tr. at 11-18.) The ALJ's decision became the final decision of the Commissioner on July 21, 2005, when the Appeals Council denied Claimant's request for review. (Tr. at 3-5.) Claimant filed the present action seeking judicial review of the administrative decision on August 9, 2005, pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's

remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace),

>we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 13.) Under the second inquiry, the ALJ found that Claimant suffered from an affective disorder (bipolar), which the ALJ regarded as a severe impairment. (Tr. at 13, 17.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 13, 17.) The ALJ then found that Claimant had a residual functional capacity "to perform work at all levels of exertion that were nonstressful and did not require frequent contact with others or with the public." (Tr. at 14.) The ALJ concluded, in view of Claimant's residual functional capacity and based upon the testimony of Vocational Expert ("VE"), Ted Tanzey, that Claimant could return to his past relevant work as a welder. (Tr. at 16, 17.) Alternatively, at the fifth inquiry, the ALJ determined on the basis of VE testimony, that Claimant could perform sedentary level jobs such as a shipping/receiving clerk, an assembler, and a dispatcher. (Tr. at 16.) On this basis, benefits were denied. (Tr. at 17-18.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on December 14, 1956, and was 48 years old at the time of the administrative hearing. (Tr. at 58, 326.) Claimant had a high school education and vocational rehabilitation training in air conditioning and refrigeration. (Tr. at 327.) In the past, Claimant worked as an infantryman in the Army and as a welder. (Tr. at 78, 327-28, 332, 336.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence of record and will discuss it further below as it relates to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ discounted evidence found in a prior ALJ decision and failed to consider all evidence of record, including a change in Claimant's Global Area of Functioning ("GAF"). (Pl.'s Br. at 10-12.) The Commissioner asserts that these arguments are without merit and that substantial evidence supports the ALJ's decision. (Def.'s Br. at 5-7.)

Analysis

1. Prior ALJ Decision.

Claimant argues that the ALJ "relied upon part of the evidence in the record to the exclusion of the record as a whole in making his decision." (Pl.'s Br. at 10.) He also argues that the ALJ discounted evidence that "was found in the ALJ's prior decision" dated February 13, 1985. (Id.) Claimant further argues that the ALJ failed to consider his GAF of 45 in 1988 and 55 on January 24, 2005. (Pl.'s Br. at 11.) The Commissioner asserts that the relevant period at issue is from February 14, 1985, through December 31, 1987, and that the ALJ "properly only took into account the portion of the record that encompassed evidence relating to the above closed period of time." (Def.'s Br. at 5.)

The Court agrees with the Commissioner and finds that Claimant's arguments are without merit. A claimant is entitled to DIB if he is insured for benefits, has not attained retirement age, has filed an application for benefits, and is under a disability. 42 U.S.C. § 423(a)(1) (2004). As the Commissioner notes, Claimant's "last day insured" was December 31, 1987. (Tr. at 17, Finding 2.) That date was neither contested by Claimant or his attorney at the administrative hearing, nor is it contested in Claimant's Memorandum in support of his Motion for Judgment on the Pleadings. Accordingly, to obtain benefits, Claimant is required to demonstrate that he was disabled prior to December 31, 1987.

In social security cases, the doctrine of res judicata applies when there has been a "previous determination or decision . . . about [the claimant's] rights on the same facts and on the same issue or issues, and this previous determination or decision has become final by either administrative or judicial action." 20 C.F.R. § 404.957(c)(1) (2004). The Social Security Administration "treats a claimant's second or successive application for disability benefits as a claim apart from those earlier filed, at least to the extent that the most recent application alleges a previously unadjudicated period of disability." Albright v. Apfel, 174 F.3d 473, 476 (4th Cir. 1999). However, "to the extent that a second or successive application seeks to relitigate a time period for which the claimant was previously found ineligible for benefits, the customary principles of preclusion (res judicata) apply with full force." Id. at 476 n.4. In Albright, the claimant's second application for benefits alleged the same onset date as a prior application that was denied. See id. The Fourth Circuit noted that the second ALJ's dismissal of the claims insofar as they related to the previously adjudicated period was "entirely proper." Id.

As previously noted, Claimant filed his first application for benefits on July 20, 1983, alleging disability as of November 14, 1981. (Tr. at 11, 29.) This application was denied by ALJ Arthur T. Stephenson on February 13, 1985. (Tr. at 27-33.) That decision was final and binding on the parties because Claimant failed to appeal the decision. (Tr. at 11.) Claimant's current application is thus considered a new claim, relating to Claimant's condition subsequent to the prior adjudication, that is, from February 13, 1985, through his last day insured, December 31, 1987. See Albright v. Apfel, 174 F.3d at 474 ("The SSA considers these applications to be new claims, relating to Albright's condition subsequent to the prior adjudication, i.e., from May 29, 1992 onward."). The current ALJ, David S. Antrobus, found the February 13, 1985, decision res judicata and dismissed Claimant's February 2, 2004, hearing request with regard to entitlement to benefits through that date. (Tr. at 12, 17.) The

Court finds that the ALJ properly applied the doctrine of res judicata. Accordingly, as the Commissioner asserts, the relevant period at issue is from February 13, 1985, through December 31, 1987.

The Court finds the ALJ's treatment of the medical evidence proper. In his decision, the current ALJ states that he considered all evidence of record, including Claimant's medical history and medical evidence prior to February 13, 1985, and summarized the medical evidence from that date until his insured status expired on December 31, 1987. (Tr. at 13-16.) Although Claimant argues that the ALJ failed to consider his GAF of 45, which indicated serious impairments in functioning, the evidence indicates that this rating extended back only to 1988, after the relevant period at issue had closed. (Tr. at 97.) Thus, the ALJ properly did not consider such evidence. "It is not enough for a claimant to show that [he or] she suffered from severe medical conditions or impairments which later became disabling; rather, the subject medical conditions must have become disabling prior to the date last insured." Fulbright v. Apfel, 114 F.Supp.2d 465, 475 (W.D. N.C. 2000)(*citing* Harrah v. Richardson, 446 F.2d 1, 2 (4th Cir. 1971)(finding no "manifest error in the record of the prior administrative proceeding" where the claimant's condition became disabling after his date last insured.).

2. Current ALJ Decision.

Claimant next argues that the ALJ's decision is not supported by substantial evidence. (Pl.'s Br. at 11-13.) The Commissioner asserts that the ALJ's decision is supported by substantial evidence and that Claimant's arguments are without merit. (Def.'s Br. at 6-7.) Claimant does not elaborate on this argument other than to note the medical evidence prior to or subsequent to the relevant period at issue. (Pl.'s Br. at 11-12.) Having no specific objections to the Commissioner's decision, this Court has reviewed the entire record to see if it comports with the substantial evidence standard.

The ALJ considered all evidence of record, including the medical evidence and evidence regarding Claimant's daily activities and limitations. The ALJ noted that although Claimant suffered from a bipolar disorder, treatment notes indicated that he responded to medication and experienced no significant feelings of depression. (Tr. at 15-16, 80-92.) Although Claimant alleged that he suffered knee pain, the ALJ found no evidence of record to support such an impairment. (Tr. at 15.) The ALJ found Claimant's statements not entirely credible, and Claimant has not challenged this finding. The ALJ noted that Claimant testified that due to knee pain and numbness, he could stand and walk no more than 20 minutes and that due to hernias, he was unable to lift even ten pounds of weight. (Tr. at 14-15, 330, 334.) Claimant further testified that he has difficulty concentrating on paperwork. (Tr. at 329, 333.) However, Claimant also indicated that he engaged in the activities of mowing grass, rabbit hunting, fishing, performing odd jobs, refinishing furniture for five hours a day, attending auto mechanics classes twice a week, working on his truck, attending classes in air conditioning and refrigeration, and painting his trailer. (Tr. at 15, 80, 82, 84-88, 91-92, 330.) Progress notes indicate that Claimant responded to treatment, was able to concentrate on work, did not have feelings of hopelessness or helplessness, denied out of the ordinary feelings and major feelings of depression, and admitted that he was comfortable around crowds. (Tr. at 15, 80-92.) Based on Claimant's reported activities, the ALJ rejected Claimant's alleged limitations. (Tr. at 16.) After considering all of the evidence, the ALJ concluded that Claimant possessed the residual functional capacity to perform work at all levels of exertion that was nonstressful and did not require frequent contact with others or with the public. (Tr. at 14.) The ALJ deemed this finding consistent with the medical evidence establishing a bipolar disorder resulting in a mild to moderate limitation of social functioning. (Tr. at 14, 16.)

A review of the record reveals that the decision of the Commissioner is supported by substantial evidence. The ALJ thoroughly reviewed all of the medical evidence of record and

considered the testimony of Claimant. (Tr. at 13-16.) The ALJ also complied with the applicable Regulations and case law in determining that Claimant did not have an impairment or combination of impairments that met or medically equaled a listed impairment, that Claimant was not entirely credible regarding the severity of his pain and other symptoms, that Claimant was able to perform work at all levels of exertion, that Claimant could perform his past relevant work as a welder, and alternatively, that Claimant could perform a significant number of jobs in the national economy at the sedentary level of exertion despite his severe impairment. Therefore, after careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings is **DENIED**, Defendant's Motion for Judgment on the Pleadings is **GRANTED**, the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the docket of this Court.

ENTER: August 31, 2006.

R. Clarke VanDervort
United States Magistrate Judge